UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
AMPARO JIMENEZ and UZIEL JIMENEZ, as     :
Administrator of the Estate of Francisco        :
Jimenez,                                                           :
                                        Plaintiffs,              :
                                                                        :
v.                                                                      :
                                                                        :            **OPINION AND ORDER**
CITY OF NEW ROCHELLE, DWAYNE           :
JONES, CHRISTOPHER GUGLIELMO,          :            19 CV 2525 (VB)
SEAN KANE, BRIAN FAGAN, MICHAEL       :
VACCARO, SCOTT WALLACH, and              :
MATTHEW P. VELASCO, all in their            :
individual capacities and in their official      :
capacities,                                                      :
                                        Defendants.          :
--------------------------------------------------------------x

Briccetti, J.:

        Plaintiffs Amparo Jimenez and Uziel Jimenez, as administrator of the estate of Francisco

Jimenez, bring this action pursuant to 42 U.S.C. § 1983 against defendants the City of New

Rochelle, Dwayne Jones, Christopher Guglielmo, Sean Kane, Brian Fagan, Michael Vaccaro,

Scott Wallach, and Matthew P. Velasco.  Plaintiffs assert claims for false arrest, false

imprisonment, excessive force, failure to intervene, malicious prosecution, and municipal

liability.  Plaintiffs also bring state-law claims for trespass, assault and battery, false arrest, false

imprisonment, and malicious prosecution.

        Now pending is defendants' partial motion to dismiss the amended complaint ("AC")

pursuant to Rule 12(b)(6).  (Doc. #47).  Defendants do not move to dismiss plaintiffs' excessive

force, failure to intervene in the use of force, or state-law assault and battery claims.

        For the following reasons, the partial motion to dismiss is GRANTED.

        The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the AC and draws all reasonable inferences in plaintiffs' favor, as summarized below.

Plaintiffs allege that, on January 18, 2018, Francisco Jimenez and Amparo Jimenez, Francisco's mother, were at their home in New Rochelle, New York.  According to plaintiffs, defendants Jones, Guglielmo, Kane, and Fagan, each an officer of the New Rochelle Police Department, came onto Francisco and Amparo's porch to arrest Francisco.  Plaintiffs allege the officers "tackled [Francisco] to the floor, kicked and punched [him], manipulated [his] left shoulder, and handcuffed [him]."  (Doc. #35 ("AC") ¶¶ 35–36).  Plaintiffs claim that when Amparo entered the porch and attempted to record the arrest on her cell phone, Kane pushed her and told her to leave.  Plaintiffs allege one of the defendants knocked the phone out of Amparo's hand, one of the defendants knocked her down, and one of the defendants struck her in the head.  According to plaintiffs, each time Amparo tried to get up, Kane and/or Guglielmo knocked her back down.  Plaintiffs claim defendant Vaccaro also participated in the arrest but do not make specific allegations as to Vaccaro's conduct.  According to plaintiffs, both Francisco and Amparo sustained physical injuries and incurred medical expenses as a result of the alleged assault.

Plaintiffs further allege Jones, Guglielmo, Kane, and Fagan arrested Francisco for resisting arrest and obstructing governmental administration.  According to plaintiffs, defendants Wallach and Velasco transported Francisco to the New Rochelle Police Department.  Plaintiffs further claim Vaccaro "importuned" Jones, Guglielmo, Kane, and Fagan to arrest Francisco. (AC ¶ 45).

According to plaintiffs, when defendants went to Francisco's residence to arrest him on January 18, 2018, they "were acting on the basis of a bench warrant issued by the City Court of the City of New Rochelle which had been vacated prior to January 18, 2018." (AC ¶ 74). Plaintiffs further allege "a clerk of the City Court of the City of New Rochelle transmitted the information that the warrant had been vacated to the New Rochelle Police Department on the date that the warrant was vacated."[1] (Id. ¶ 74). However, according to plaintiffs, an unidentified employee of the New Rochelle Police Department failed to update the department's computer system to reflect the warrant's vacatur.

The same day he was arrested, Francisco posted bail and was released.

Plaintiffs allege Vaccaro initiated criminal proceedings against Francisco by signing an information that charged Francisco with obstructing governmental administration in the second degree and resisting arrest. Plaintiffs further allege that, on October 31, 2018, Vaccaro signed a superseding information, which dropped the charges of obstructing governmental administration in the second degree and resisting arrest and instead charged Francisco with one count of disorderly conduct. On August 5, 2019, following a bench trial held on June 24, 2019, Francisco was found not guilty of disorderly conduct.[2]

---

[1] Plaintiffs do not allege when the warrant was vacated.

[2] On January 16, 2020, Francisco died due to causes unrelated to the incident alleged in the AC. On March 16, 2020, the Court issued an Order substituting plaintiff Uziel Jimenez, Jr., as Administrator of the Estate of Francisco Jimenez, for Francisco. (Doc. #46).

**DISCUSSION**

I.    Legal Standard

    A.    Motion to Dismiss Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[3]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

    B.    Qualified Immunity Standard

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[3]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "Defendants bear the burden of establishing qualified immunity."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful."  Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013).

The Court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if "the facts supporting the defense appear on the face of the complaint."  McKenna v. Wright, 386 F.3d 432, 435–36 (2d Cir. 2004).  Thus, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense."  Id. at 436.

II.    Documents Relied Upon

In support of their motion, defendants submitted a copy of a police incident report and attached supplemental narrative report prepared by Vaccaro regarding Francisco's arrest.  (Doc. #52-5).  Defendants request the Court consider this document either as a public record or by invoking Fed. R. Civ. P. 12(d).

The Court declines to do so.

"When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based

solely upon the complaint—including materials attached or integral to the complaint, documents incorporated into the complaint by reference, or matters of which the court may take judicial notice—or convert the motion to one for summary judgment under Federal Rule of Civil Procedure 56."  MC v. Arlington Cent. Sch. Dist., 2012 WL 3020087, at *4 (S.D.N.Y. July 24, 2012); see Fed. R. Civ. P. 12(d).

Courts may take judicial notice of public documents and records without converting the motion into one for summary judgment.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  Public documents and records include case law, statutes, complaints and documents filed in other courts, indictments, and records of state administrative procedures.  See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 76 (2d Cir. 1998); see also Campos v. Aegis Realty Mgmt. Corp., 2020 WL 433356, at *4 (S.D.N.Y. Jan. 28, 2010).  When taking judicial notice of a public document or record the Court "should generally take judicial notice 'to determine what statements [the documents] contain[] . . . not for the truth of the matters asserted."  Schubert v. City of Rye, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)); see also, e.g., Staehr v. Hartford Fin. Servs. Grp., 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents.").

Alternatively, Fed. R. Civ. P. 12(d) permits a court to convert a motion to dismiss under Rule 12(b)(6) into a summary judgment motion.

But conversion is improper when the nonmovant has not "had the opportunity to discover information that is essential to his opposition."  Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000).  Accordingly, "[o]nly in the rarest of cases may summary judgment

be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."
Id. (collecting cases).  "The essential inquiry is whether the [plaintiff] should reasonably have
recognized the possibility that the motion might be converted into one for summary judgment or
was taken by surprise and deprived of a reasonable opportunity to meet facts outside the
pleadings."  Malaney v. Elal Isr. Airlines, 331 F. App'x 772, 774 (2d Cir. 2009) (summary order)
(quoting Groden v. Random House, Inc., 61 F.3d 1045, 1052–53 (2d Cir. 1995)).

First, judicial notice is inappropriate here.  The police incident report and attached
supplemental narrative report is not a public record.  See Harley v. The City of New York, 2016
WL 552477, at *3 n.5 (E.D.N.Y. Feb. 10, 2016) (declining to take judicial notice of police
reports because the facts contained in such reports are "often subject to reasonable dispute and
come from sources whose accuracy cannot always (or automatically) be assumed").  In addition,
defendants rely on the report for the truth of the matters asserted therein, which this Court cannot
do even when taking judicial notice of documents.

Second, the Court declines to convert the instant motion to dismiss into one for summary
judgment.  Plaintiffs have had no opportunity to conduct discovery.  Moreover, defendants fail to
offer any argument why conversion is appropriate.  Instead, they vaguely suggest the "Court
could invoke Rule 12(d) and consider these documents, giving Plaintiffs 'a reasonable
opportunity to present all the material that is pertinent to the motion.'"  (Doc. #49 at ECF 19).[4]
This is plainly insufficient to warrant conversion.

Accordingly, the Court will not consider the police incident report and attached
supplemental narrative report.

---

[4]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case
Filing system.

III.     <u>False Arrest and False Imprisonment Claims</u>

Defendants argue plaintiffs' false arrest and false imprisonment claims fail because, even accepting the allegations in the AC as true, the officers had probable cause to arrest Francisco on January 18, 2018.  Defendants also argue they are entitled to qualified immunity with respect to these claims.

The Court agrees as to both arguments.

A.     <u>Applicable Law</u>

Claims for false arrest and false imprisonment are considered synonymous causes of action.  <u>See</u> <u>Posr v. Doherty</u>, 944 F.2d 91, 96 (2d Cir. 1991).  Section 1983 claims for false arrest and false imprisonment are analyzed under the law of the state where the arrest occurs.  <u>Jaegly v. Couch</u>, 439 F.3d 149, 151 (2d Cir. 2006).  "Under New York law, the elements of a false arrest and false imprisonment claim are:  (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  <u>Hernandez v. United States</u>, 939 F.3d 191, 199 (2d Cir. 2019).

"Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest . . . committed by their employees under the doctrine of <u>respondeat superior</u>."  <u>Mesa v. City of N.Y.</u>, 2013 WL 31002, at *34 (S.D.N.Y. Jan. 3, 2013).

1.     <u>Probable Cause</u>

A confinement by police officers is "otherwise privileged" when it is supported by probable cause.  <u>Morris v. Silvestre</u>, 604 F. App'x 22, 24 (2d Cir. 2015).  Thus, the existence of probable cause is an absolute defense to claims of false arrest and false imprisonment.  <u>Betts v. Shearman</u>, 751 F.3d 78, 82 (2d Cir. 2014).  An officer has probable cause to arrest when he or

she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information."  Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).  Courts determine whether probable cause existed by focusing on the facts available to the arresting officer at the time of the arrest.  See Jaegly v. Couch, 439 F.3d at 153.

To defeat a false arrest claim, an arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged.  Devenpeck v. Alford, 543 U.S. 146, 153 (2004). As long as there was probable cause to arrest the plaintiff for some offense, a false arrest claim will fail.  Jaegly v. Couch, 439 F.3d at 152.

When an arrest is made without a judicial warrant, the existence of probable cause is an affirmative defense for which the defendant bears the burden of proof.  See Dickerson v. Chertoff, 604 F.3d 732, 751 (2d Cir. 2010).  Nevertheless, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."  McKenna v. Wright, 386 F.3d at 436.

The Second Circuit has not specifically addressed whether, in the context of a civil claim for false arrest, probable cause exists when an arresting officer mistakenly relies on a warrant that, unbeknownst to the officer, had been vacated.  Nevertheless, in United States v. Miller, in the context of a criminal motion to suppress, the court held that "[w]hen an officer learns from a

computer database . . . that a person is the subject of an outstanding arrest warrant, probable

cause exists to arrest that person."  265 F. App'x 5, 7 (2d Cir. 2008) (summary order).  There the

court declined to suppress evidence seized at the time of the arrest, concluding the officers had

probable cause because their reliance on the computer record was objectively reasonable.  In

reaching this conclusion, the court relied on its prior opinion in United States v. Santa, where it

had concluded the "arresting officers' reliance on the NYSPIN [New York Statewide Police

Information Network] record to arrest [defendant] was objectively reasonable" even though the

warrant later turned out to be invalid.  180 F.3d 20, 27 (2d Cir. 1999).

Relying on this precedent, a number of courts in this circuit have held an "[o]fficer['s]

discovery of [a] bench warrant provided probable cause to arrest for an open warrant, even

though, unknown to her at the time, the warrant had been vacated."  Willis v. City of New York,

2015 WL 556884, at *5 (S.D.N.Y. Feb. 9, 2015); Palacios v. City of New York, 2017 WL

4011349, at *7 (S.D.N.Y. Sept. 11, 2017) (granting summary judgment for officers and finding

probable cause to arrest based on their reliance on inaccurate open arrest warrant); Morrison v.

City of New York, 2019 WL 4010106, at *2–3 (Aug. 13, 2019) ("[I]f an officer makes an arrest

based on an invalid warrant, the officer may still have had probable cause for the arrest if he or

she 'did not know, and had no reason to know, that the warrant had been vacated' or was

otherwise invalid.").

      2.    Qualified Immunity

District courts have alternatively dismissed false arrest claims on the basis of qualified

immunity, holding that even if the arresting officers did not, as a matter of law, have probable

cause to arrest based on an invalid or vacated warrant, they were nevertheless entitled to

qualified immunity because "arguable probable cause" existed.  Palacios v. City of New York,

2017 WL 4011349, at *7; Willis v. City of New York, 2015 WL 556884, at *5; Mayer v. City of New Rochelle, 2003 WL 21222515, at *4–5 (S.D.N.Y. May 27, 2003) (finding officers were entitled to qualified immunity on plaintiff's false arrest claim while declining to reach the question of whether plaintiff's arrest was without probable cause).

"Arguable probable cause to arrest exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Garcia v. Does, 779 F.3d at 92. The arguable probable cause standard is "more favorable to the officers than the one for probable cause," Ackerson v. City of White Plains, 702 F.3d 15, 21 (2d Cir. 2012), as "[t]his forgiving standard protects all but the plainly incompetent or those who knowingly violate the law," Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001).[5]

B.    Application

Plaintiffs fail plausibly to allege a claim for false arrest and false imprisonment on behalf of Francisco because, accepting the allegations in the AC as true, defendants had probable cause to arrest Francisco. Specifically, plaintiffs allege that, on January 18, 2018, defendants Jones, Guglielmo, Kane, Fagan, Vaccaro, Wallach, and Velasco "were acting on the basis of a bench warrant issued by the City Court of the City of New Rochelle which had been vacated prior to January 18, 2018." (AC ¶ 74). According to plaintiffs, although the warrant had been vacated prior to the arrest, it was still reflected as open in "the computer system utilized by the defendants." (Id. ¶ 76). Defendants' reliance on that database is sufficient to establish probable

---

[5]    Federal qualified immunity analysis "also applies to, and controls, the qualified immunity questions presented under New York law." Jones v. Parmley, 465 F.3d 46, 63–64 (2d Cir. 2006) ("New York law . . . grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis.").

cause for Francisco's arrest.  See United States v. Miller, 265 F. App'x at 7 ("When an officer learns from a computer database . . . that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person.").

Plaintiffs' allegation that a mistake was made, and the warrant was not actually open at the time of the arrest, does not alter the probable cause analysis.  As discussed above, "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information."  See Bernard v. United States, 25 F.3d at 102.  Plaintiffs allege nothing in the AC suggesting the officers' reliance on the computer system was in bad faith.  However, in their opposition, plaintiffs argue there is a "question as to whether defendants were acting under a genuine belief that a valid warrant existed."  (Doc. #53 ("Opp") at ECF 30).  Specifically, they argue "defendant Vaccaro's 'search' for warrant information did not include a search of either the court computer or the state computer system (NYSPIN), but was limited to his 'daily' check of a warrant list and a call to an unidentified individual at H.Q."  (Id.).  But these new facts are improperly alleged "for the first time in opposition papers and will not be considered."  Red Fort Capital, Inc. v. Guardhouse Prods. LLC, 397 F. Supp. 3d 456, 480 n.8 (S.D.N.Y. 2019).[6]

Plaintiffs argue that, under New York law, an arrest made solely on the basis of a warrant which has been vacated is not justified by probable cause.  In support, they point to People v.

---

[6]     Even if the Court were to consider these allegations, the individual defendants would still be entitled to qualified immunity.  According to plaintiffs' new allegations, the officers relied on a "Total Enforcement Warrant list" and confirmed the existence of the warrant with headquarters, which provided the number for the outstanding warrant.  This reliance on the list and confirmation of an outstanding warrant was objectively reasonable.  Cf. Vasquez v. Maloney, --- F.3d ---, 2021 WL 826214, at *5 (2d Cir. Mar. 4, 2021) (finding officers were not entitled to qualified immunity when officers based arrest on information that another officer "believed that there might be a warrant").

Jennings, in which the New York Court of Appeals granted a motion to suppress and vacated a conviction because "an arrest made in reliance upon the computerized criminal record file of defendant, which showed as outstanding a parole violation warrant which had in fact been executed nine months before and vacated four months before the arrest, is made without probable cause." 54 N.Y.2d 518, 520 (1981). But that court has since distinguished between the suppression of evidence and the maintenance of a civil action for money damages due to a vacated warrant. See Martinez v. Schenectady, 97 N.Y.2d 78, 83–84 (2001). Although suppression of evidence or vacatur of a conviction may be warranted when an arrest stems from a previously-vacated warrant, reliance on the same vacated warrant may still preclude liability in the context of a civil suit alleging false arrest or false imprisonment. See id.

Moreover, even if defendants did not, as a matter of law, have probable cause to arrest Francisco, defendants are entitled to qualified immunity because—based on the allegations in the AC—they had arguable probable cause to do so. The officers' reliance on the computer system, which reflected an open warrant for Francisco's arrest, was objectively reasonable. See United States v. Santa, 180 F.3d at 27. That the warrant had been vacated does not alter the reasonableness of their reliance. Indeed, plaintiffs allege no facts demonstrating the arresting officers knew or reasonably should have known the warrant had been vacated. Moreover, plaintiffs do not allege the warrant was facially invalid or that the computer system on which defendants relied was itself unreliable. Thus, defendants are entitled to qualified immunity as to plaintiffs' false arrest and false imprisonment claims.

Accordingly, the false arrest and false imprisonment claims under both Section 1983 and New York state law must be dismissed.

IV.    <u>Failure to Intervene Claim</u>

Defendants argue plaintiffs fail plausibly to plead Vaccaro failed to intervene to prevent the false arrest and imprisonment of Francisco.

The Court agrees.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official." <u>Id</u>.

In the context of qualified immunity, "[a] police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 129 (2d Cir. 1997). Further, "the failure to intercede must be under circumstances making it objectively unreasonable for [the officer] to believe that his fellow officers' conduct did not violate those rights." <u>Id</u>.

Here, the arresting officers had at least arguable probable cause to arrest Francisco because "a reasonable police officer in the same circumstances and possessing the same knowledge as [the officers] could have reasonably believed that probable cause existed." <u>Cerrone v. Brown</u>, 246 F.3d 194, 202 (2d Cir. 2001). Thus, Vaccaro's failure to intervene was also objectively reasonable. <u>See</u> <u>Holland v. City of New York</u>, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) (holding qualified immunity applied "equally" to defendants who allegedly

failed to intervene in the underlying constitutional violation "because they too would not reasonably have known that [the plaintiff]'s constitutional rights were being violated").

Accordingly, the failure to intervene claim against Vaccaro must be dismissed.

V.    Malicious Prosecution Claim

Defendants argue plaintiffs fail plausibly to allege a claim against Vaccaro for malicious prosecution.

The Court agrees.

A.    Applicable Law

Section 1983 provides a claim for malicious prosecution, the elements of which are borrowed from state law. Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). Under New York law, to state a malicious prosecution claim, a plaintiff must plausibly allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010).

"As with false arrest claims, the existence of probable cause is a complete defense to a claim of malicious prosecution in New York, but unlike false arrest claims, the defendant must have possessed probable cause as to each offense charged." Costello v. Milano, 20 F. Supp. 3d 406, 415 (S.D.N.Y.2014) (quoting Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)).

Under New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. Lowth v. Town of Cheektowga, 82 F.3d 563, 571 (2d Cir. 1996). "[F]or probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." Id. However, when

"a court finds there was probable cause for an arrest, and in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie."  <u>Rodriguez v. City of New York</u>, 2012 WL 1059415, at *11 (E.D.N.Y. Mar. 28, 2012).

"A law enforcement officer is entitled to qualified immunity in a suit for malicious prosecution if he can establish that he had at least arguable probable cause to charge the plaintiff."  <u>Tucker v. Decker</u>, 683 F. App'x 20, 22 (2d Cir. 2017) (summary order).

B.   <u>Analysis</u>

Plaintiffs' malicious prosecution claim must be dismissed because, as the Court has already concluded, based on the allegations in the AC, the officers had probable cause to arrest Francisco.

Plaintiffs argue Vaccaro lacked probable cause to prosecute Francisco because Francisco did not commit any act which would constitute either of those crimes, and Francisco could not be guilty of resisting arrest or obstructing governmental administration in the second degree because a valid warrant for his arrest did not exist.  These arguments are unpersuasive.

First, plaintiffs must plead a lack of probable cause for the charges upon which the proceeding was commenced.  But the AC does not allege sufficient facts about Francisco's conduct to plead Vaccaro lacked probable cause to prosecute Francisco for resisting arrest, obstructing governmental administration in the second degree, or disorderly conduct.  The only facts alleged in the AC about Francisco's arrest are that the officers entered the porch to arrest Francisco, tackled, kicked, and punched him before manipulating his arm and arresting him, and

that Amparo entered the porch to observe Francisco being arrested.[7]  The AC alleges no facts

about Francisco's behavior prior to Amparo's entry to the porch from which the Court can infer

defendants lacked probable cause to later prosecute Francisco for resisting arrest, obstructing

governmental administration in the second degree, or disorderly conduct.

Second, plaintiffs' allegation that the warrant had been vacated prior to Francisco's arrest

does not allege Francisco could not have been found guilty of resisting arrest or obstructing

governmental administration in the second degree.  New York Penal Law § 204.30 provides that

"[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a

police officer or peace officer from effecting an authorized arrest of himself or another person."

Despite plaintiffs' argument to the contrary, Francisco's arrest was "authorized" within the

meaning of the statute.  "To be 'authorized' . . . an arrest must either have been made pursuant to

a warrant or have been based on probable cause."  Weyant v. Okst, 101 F.3d at 855.  As

discussed above, the allegations in the AC demonstrate the arrest was based on probable cause.

Moreover, plaintiffs' argument that Francisco could not have been found guilty of

obstructing governmental administration in the second degree is similarly unconvincing.  New

York Penal Law § 195.05 provides that:

> A person is guilty of obstructing governmental administration when he
> intentionally obstructs, impairs or perverts the administration of law or other
> governmental function or prevents or attempts to prevent a public servant from
> performing an official function, by means of intimidation, physical force or
> interference, or by means of any independently unlawful act.

---

[7]     In their opposition brief plaintiffs argue Francisco could not have resisted the arrest or
interfered with the actions of the police officers because he was tackled to the ground from
behind.  Although plaintiffs cite to paragraph 36 of the AC in support of this allegation,
paragraph 36 is devoid of any such fact.  The Court will not consider this improperly raised
allegation.

Specifically, plaintiffs argue the officers were not performing an "official function" because the arrest was not pursuant to a valid warrant and was therefore unlawful.  But based on the allegations in the AC, the officers had probable cause to arrest Francisco on the warrant and they were therefore performing an "official function."

Nor is the Court persuaded by plaintiffs' new allegations improperly raised for the first time in their opposition to the pending motion.  Specifically, plaintiffs now claim Vaccaro lacked probable cause to prosecute Francisco because he learned the warrant had been vacated at the time he signed the accusatory instrument and that "Vaccaro certainly knew that the warrant had been vacated . . . when he signed the superseding information."  (Opp. at ECF 25).  Even if, prior to signing either charging instrument, Vaccaro had learned the warrant was vacated before Francisco's arrest, that would not alter the probable cause analysis.  This is because courts determine whether probable cause existed by focusing on the facts available to the arresting officer at the time of the arrest.  See Jaegly v. Couch, 439 F.3d at 153.  Thus, the arrest was supported, at all times, by probable cause.

Accordingly, plaintiffs' claim for malicious prosecution must be dismissed under both Section 1983 and New York state law.

VI.     Municipal Liability

Defendants argue plaintiffs' Section 1983 claims against the City must be dismissed because plaintiffs fail to state a claim pursuant to the requirements of Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

The Court agrees.

A.     <u>Applicable Law</u>

Under <u>Monell</u>, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury."  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. at 694.  Thus, to assert a Section 1983 claim against the City, plaintiffs must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.  <u>Jones v. Town of E. Haven</u>, 691 F.3d 72, 80 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees."  <u>Brandon v. City of New York</u>, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

"While <u>Monell</u> claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), such claims nevertheless must meet the plausibility requirements of <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 572 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, (2009)."  <u>Guzman v. United States</u>, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (quoting <u>Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 168 (1993)).  "In other words, boilerplate allegations will not suffice."  <u>Id.</u>  "[T]he allegations [a

defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are

plainly insufficient." Missel v. Cty. of Monroe, 351 F. App'x 543, 545–46 (2d Cir. 2009)

(summary order) (citing Dwares v. City of New York, 985 F.2d 94, 100–02 (2d Cir. 1993)).

        B.      Analysis

        Plaintiffs allege in only a conclusory fashion that the City of New Rochelle failed to train,

retrain, supervise, monitor and discipline its officers.  They also allege the City failed adequately

to investigate complaints against police officers and to take appropriate remedial action to

prevent further violations of the civil rights of members of the public.  These allegations are

insufficient to support a Monell claim under Section 1983.

        Moreover, plaintiffs fail to identify a municipal policy or custom that caused Francisco or

Amparo's injuries.  They also fail to provide any factual allegations supporting a plausible

inference of a pattern and practice of a failure to train or supervise so consistent and widespread

as to constitute a municipal policy or custom.  And, plaintiffs' vague allegation that the City

"was aware from Notice of Claim, from lawsuits, from claims filed with the New Rochelle

Police Department, and from the New Rochelle Police Department's own observations, that

defendants [Jones, Guglielmo, Kane, Fagan, Vaccaro, Wallach, and Velasco] are unfit, ill[-

]tempered police officers who have the propensity to commit the acts alleged herein" (AC

¶ 113), falls short of plausibly alleging the City had a policy of failing to investigate complaints.

        Accordingly, plaintiffs' Section 1983 claims against the City of New Rochelle must be

dismissed.[8]

---

[8]        Likewise, any Section 1983 claims against the police officer defendants "in their official
capacities" must be dismissed.

VII.   <u>Trespass Claim</u>

Defendants argue plaintiffs' state-law trespass claim should be dismissed.

The Court agrees.

"Under New York law, trespass is the intentional invasion of another's property." <u>Scribner v. Summers</u>, 84 F.3d 554, 557 (2d Cir. 1996). "The elements of a cause of action sounding in trespass are an intentional entry onto the land of another without justification or permission." <u>Marone v. Kally</u>, 109 A.D.3d 880, 882 (2d Dep't 2013).

"[A]n arrest warrant . . . implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." <u>Payton v. New York</u>, 445 U.S. 573, 603 (1980). Under New York law, "law enforcement personnel acting lawfully in the furtherance of their duty are excused from what may be otherwise trespassory acts." <u>Hand v. Stray Haven Humane Soc. & S.P.C.A., Inc.</u>, 21 A.D.3d 626, 628 (3d Dep't 2005).

Plaintiffs' trespass claim must be dismissed because the arresting officers had probable cause to enter Amparo and Francisco's residence to arrest Francisco. Because they were "acting lawfully in furtherance of their duty," they are excused from what may otherwise have been a "trespassory act." <u>Hand v. Stray Haven Humane Soc. & S.P.C.A., Inc.</u>, 21 A.D.3d at 628.

**CONCLUSION**

The partial motion to dismiss is GRANTED.

By April 12, 2021, defendants shall file an answer to the remaining claims in the amended complaint.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate Scott Wallach and Matthew P. Velasco as defendants in this action.

The Clerk is further instructed to terminate the motion.  (Doc. #47).

Dated: March 29, 2021
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge